IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **CHRISHONA HODGES,** | ) | |
| | ) | |
| Plaintiff, | ) | CASE NO. 21-cv-3148 |
| | ) | |
| v. | ) | |
| | ) | |
| **CASTLE CREDIT CO.** | ) | Judge Robert W. Gettleman |
| **HOLDINGS, LLC** | ) | |
| | ) | Magistrate Judge Sunil Harjani |
| Defendant. | ) | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF HER UNOPPOSED MOTION TO CERTIFY A COLLECTIVE ACTION PURSUANT TO SECTION 216(B) OF THE FLSA SOLELY FOR SETTLEMENT PURPOSES, FOR APPROVAL OF AN OPT-IN SETTLEMENT, AND FOR APPROVAL OF AWARDS OF ATTORNEYS' FEES AND <u>COSTS AND INCENTIVE AWARD</u>**

Plaintiff Chrishona Hodges ("Plaintiff" or "Named Plaintiff") seeks an order (a copy of which is attached to this memorandum): (1) certifying a collective action pursuant to Section 216(b) of the Fair Labor Standards Act ("FLSA") solely for settlement purposes; (2) approving the Joint Stipulation of Settlement ("Settlement Agreement") made and entered into by Plaintiff and Defendant Castle Credit Co. Holdings, LLC ("Castle Credit" or "Defendant"), including the proposed opt-in settlement procedure and the form and manner of the proposed class notice; and (3) approving an award of $20,000.00 to Plaintiff's Counsel for Attorneys' Fees and Litigation Expenses and an award of $2,000.00 to Named Plaintiff for an Incentive Award.

In support of approval of the Settlement Agreement this memorandum describes Plaintiff's claims, Defendant's principal defenses, and the proceedings leading up to the proposed settlement of this case. This memorandum also summarizes the principal provisions of the parties' Settlement Agreement, which is attached hereto as Exhibit 1, including the relief that it provides Settlement Class Members. The memorandum also demonstrates that the substantive

and procedural requirements have been satisfied for certification of the Settlement Class under 29 U.S.C. § 216(b).

I.  **BACKGROUND.**

   A.  **Procedural Background.**

On June 8, 2021, the Named Plaintiff filed this lawsuit, on behalf of herself and others similarly situated, alleging that Defendant failed to pay them at the correct overtime rate, in violation of the Fair Labor Standards Act, ("FLSA"), 29 U.S.C. § 207, and the Illinois Minimum Wage Law ("IMWL"), 820 ILCS 105/4a. More specifically, Plaintiff alleged that Defendant did not include certain commission payments in their overtime rate of pay, which resulted in Plaintiff being paid less than one-and-a-half times her regular rate of pay for hours worked in excess of forty in a workweek. *See* Dkt. No. 1.

Shortly after Plaintiff filed her lawsuit, the parties placed the case in a settlement posture. In July 2021, in an effort to resolve Plaintiff's claims, Defendant provided Class Counsel with electronic payroll data and calculations of additional overtime payments that, based on Plaintiff's allegations, Defendant might owe persons who it employed between June 1, 2018 and June 1, 2021. *See* Exhibit 2 (Wilmes Declaration) ¶5. Plaintiffs' Counsel examined the electronic data and conducted their own calculations, determining that the total amount of unpaid overtime owed to the putative Class Members over the Class Period was approximately $30,000.00, in addition to potential liquidated damages under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 216, treble damages and five-percent per-month penalties under the Illinois Minimum Wage Law (IMWL), 820 ILCS 105/12, as well as Plaintiff's attorneys' fees and costs. *Id.*

On October 20, 2021, the parties agreed to settle the case for a total settlement payment not to exceed $85,000. *See* Ex. 1.

B.	**The Terms Of The Parties' Agreement.**

The Settlement Agreement contemplates that the Court will certify, for purposes of the Parties' Settlement, the following Settlement Class, for collective treatment pursuant to 29 U.S.C. § 216(b):

> all individuals who worked for Defendant as hourly employees in Illinois between June 11, 2018 and June 11, 2021, who worked a total of more than forty hours in a workweek, and who received commissions during at least one workweek in which the individual worked over forty hours.

Ex. 1, § 1(h).

The parties' Settlement Agreement requires Defendant to pay up to $63,000 to compensate Plaintiff and Settlement Class Members for their FLSA claims ("Settlement Payments"). *Id*. § IV(a). Additionally, the Agreement provides that Defendant will pay up to $20,000 for Plaintiff's Counsel's attorneys' fees and litigation expenses and up to $2,000 for an incentive award for the Named Plaintiff. *Id.* § IV(b)(2), (3).

The entire $63,000 will be mailed to Settlement Class Members in the form of checks, and Settlement Class Members need only negotiate their Settlement Payment checks to "opt-in" to the class and receive their payments. *Id.* § 1(d). Settlement Class Members do not have to return a claim form to obtain a settlement payment.

As set forth in the Class Notice (attached as Exhibit B to the Settlement Agreement), except for those Class Members who decline to opt-in to the class by negotiating their checks for payment within 120 days of the date the checks were mailed, all Settlement Class Members will be bound by the release of claims set forth in Section 5(b) of the Settlement Agreement. *See id.* § 5(b).

**II.     THE SETTLEMENT AGREEMENT SHOULD BE APPROVED BECAUSE THE PROPOSED SETTLEMENT CLASS IS CERTIFIABLE UNDER THE FLSA AND BECAUSE THE PROPOSED SETTLEMENT MEETS THE STANDARD FOR APPROVAL.**

**A.     The Proposed Settlement Class is Certifiable Under the FLSA.**

The Settlement Class Members' claims can be properly certified under the FLSA because all such class members are similarly situated. 29 U.S.C. § 216(b). To determine whether Class Members are similarly situated, the Court must consider: "(1) whether the plaintiffs share similar or disparate employment settings; (2) whether affirmative defenses raised by the defendant would have to be individually applied to each plaintiff; and (3) any fairness and procedural concerns." *Jirak v. Abbott Laboratories, Inc.*, 566 F. Supp. 2d 845, 848 (N.D. Ill. 2008).

Here, Plaintiff alleges that all Settlement Class Members are non-exempt employees who worked at Defendant and were not paid the correct overtime rate for all hours worked in excess of forty in a workweek. Plaintiff contends that Defendant consistently failed to include certain payments in the Settlement Class Members' regular rate of pay, thus rendering Settlement Class Members similarly situated and undercutting any individualized defenses. Additionally, "fairness and procedural considerations, including the number of plaintiffs in this case and the effectiveness of allowing them to pool their resources for litigation . . . weigh in favor of collective treatment." *Burkholder v. City of Ft. Wayne*, 750 F. Supp. 2d 990, 994 (N.D. Ind. 2010). For these reasons, certification of the Overtime Class under 29 U.S.C. § 216(b) is appropriate.

**B.     The Settlement Agreement Meets The Standard For Approval.**

Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes. *See, e.g.*, *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982); *Murphy v. Diversified Restaurant Holdings, Inc.,* No. 14-cv-

4

3653, ECF No. 124, Order Approving Settlement and Dismissing Action, ¶ 1 (N.D. Ill. Oct. 1, 2015); *see also Butler v. Am. Cable & Telephone, LLC*, No. 09 Civ. 5336, 2011 WL 4729789, at *8-9 (N.D. Ill. Oct. 6, 2011). If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement. *Lynn's Food Stores*, 679 F.2d at 1354; *Roberts v. Apple Sauce, Inc.*, No. 12 Civ. 830, 2014 WL 4804252, at *2 (N.D. Ind. Sept. 25, 2014). "It is a well settled principle that the law generally encourages settlements." *Dawson v. Pastrick*, 600 F.2d 70, 75 (7th Cir. 1979).

The settlement in this case meets the standard for approval. The settlement was the result of contested litigation. Defendant denied that it violated the FLSA and IMWL by not including commission payments when calculating workers' regular rates of pay. Recognizing the uncertain legal and factual issues involved, the parties reached their settlement after Defendant produced and the Parties' reviewed three-years' worth of payroll data for employees working in a similar role as the Named Plaintiff. At all times during the settlement negotiation process, negotiations were conducted at arm's length.

"'[I]n any case there is a range of reasonableness with respect to a settlement.'" *In re Michael Milken and Assocs. Sec. Litig.,* 150 F.R.D. 57, 66 (S.D.N.Y. 1993) (quoting *Newman v. Stein,* 464 F.2d 689, 693 (2d Cir. 1972) (Friendly, J)). The monetary relief provided in the proposed Settlement places it, taken as a whole, easily within "the range of possible approval."

The FLSA requires an employer to pay an employee one-and-a-half times their regular rate of pay for hours worked in excess of forty in a workweek. 29 U.S.C. § 207. In the case of a willful violation, the employer must pay two times the amount of wages owed. 29 U.S.C. § 216. In addition, an aggrieved plaintiff is entitled to recover his or her attorneys' fees and costs. *Id.* The IMWL also requires an employer to pay an employee one-and-a-half times their regular rate

of pay for hours worked in excess of forty in a workweek. 820 ILCS 105/4a. As a penalty, the IMWL provides that an employer must pay three times the amount of outstanding overtime wages, plus five percent of the outstanding overtime wages for each month that the wages are overdue, and it allows a prevailing plaintiff to recover attorneys' fees and costs. 820 ILCS 105/12(a).[1]

In this case, Plaintiff alleges that Defendant failed to correctly include certain commission payments in Settlement Class Members' "regular rate of pay" when calculating overtime premiums. As a result, according to Plaintiff, their rate was lower than it should have been. Plaintiff maintains that the out-of-pocket losses stemming from these alleged violations, for the time period June 1, 2018 to June 1, 2021 is approximately $30,000.00. Ex. 2, ¶6. The Settlement provides that Settlement Class Members will be paid more than 210% of that total, or $63,000. *Id.* ¶9. That exceptional result is well within "the range of possible approval." *In re Michael Milken and Assocs. Sec. Litig.,* 150 F.R.D. at 66.

### III. THE SETTLEMENT PROCEDURE AND FORM AND MANNER OF NOTICE TO THE SETTLEMENT CLASS ARE APPROPRIATE AND SHOULD BE APPROVED.

A one-step settlement approval process is appropriate. *See, e.g.*, *Briggs v. PNC Financial Services Group, Inc.,* No. 15-cv-10447, 2016 WL 7018566, at *1 (N.D. Ill. Nov. 29, 2016) citing *Koszyk v. Country Fin. a/k/a CC Servs., Inc.*, No. 16 Civ. 3571, 2016 WL 5109196, at *1 (N.D. Ill. Sept. 16, 2016) ("'A one-step settlement approval process is appropriate[]'" in FLSA settlements.); *Castillo v. Noodles & Co.,* No. 16-cv-030306, 2016 WL 7451626, at *1 (N.D. Ill. Dec. 23, 2016) (granting request for one-step approval process); *Prena v. BMO Fin. Corp.*, No.

---

[1] Prior to 2019, employers were required to pay two times the amount of outstanding wages, plus two percent of the outstanding wages for each month the wages are overdue. *See* 2019 Ill. Legis. Serv. P.A. 101-1 (S.B. 1).

15 Civ. 9175, 2015 WL 2344949, at *1 (N.D. Ill. May 15, 2015) (same). Collective actions under 29 U.S.C. § 216(b) require workers to affirmatively opt-in to the litigation, unlike in a Federal Rule of Civil Procedure 23 class action. *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 772 (7th Cir. 2013); *see also Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1529 (2013) ("Rule 23 actions are fundamentally different from collective actions under the FLSA."). Because the failure to opt in to an FLSA lawsuit does not prevent potential members of the collective from bringing their own suits in the future, FLSA collective actions do not implicate the same due process concerns as do Rule 23 actions. *Woods v. N.Y. Life Ins. Co.*, 686F.2d 578, 579-80 (7th Cir. 1982) (discussing due process concerns present in Rule 23 class action that are not present in FLSA collective actions).

The Settlement Notice attached to the Settlement Agreement as Exhibit B is also appropriate and should be approved. The direct issuance of settlement checks informs Settlement Class Members of the specific amounts of their individual Settlement Payments. The Settlement Notice sufficiently informs Settlement Class Members of the other key terms of the settlement, including how Class Members may participate (or not participate), how the Gross Settlement Amount is being allocated, what the Settlement Payment represents, the scope of the release, and the request for attorneys' fees and costs. *See Koszyk*, 2016 WL 5109196, at *2 (N.D. Ill. Sept. 16, 2016) (approving class notice that, *inter alia*, described settlement terms and fee allocation); *Zolkos v. Scriptfleet, Inc.*, No. 12 Civ. 8230, 2014 WL 7011819, at *6 (N.D. Ill. Dec. 12, 2014) (same); *Tobin v. Beer Capitol Distributing Inc.*, No. 12 Civ. 274, 2012 WL 5197976, at *3 (E.D. Wis.Oct. 19, 2012) (same).

7

IV. **THE REQUESTED AWARDS FOR ATTORNEYS' FEES AND COSTS AND FOR AN INCENTIVE AWARD ARE REASONABLE AND SHOULD BE APPROVED.**

A. **A $20,000 Award For Attorneys' Fees And Litigation Expenses Is Reasonable.**

Plaintiff's Counsel's request for $20,000 in attorneys' fees and litigation expenses, amounting to 23.5% of the Gross Settlement Amount, is reasonable and should be approved.

In awarding attorneys' fees, courts ultimately "must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *In re Synthroid*, 264 F.3d at 718. District courts must "undertake an analysis of the terms to which the private plaintiffs and their attorneys would have contracted at the outset of the litigation when the risk of loss still existed." *Sutton*, 504 F.3d at 692. They must "do their best to recreate the market by considering factors such as actual fee contracts that were privately negotiated for similar litigation, [and] information from other cases . . . ." *Taubenfeld v. AON Corp.*, 415 F.3d 597, 599 (7th Cir. 2005).

Plaintiff's request for less than one-third of the settlement in attorneys' fees is consistent with, and even below, the market in the Northern District of Illinois. *Taubenfeld,* 415 F.3d at 600 (approving award of 30% of settlement fund plus expenses based in part on analysis of similar cases in the Northern District of Illinois). Plaintiff's Counsel are experienced wage and hour class and collective action litigators and have achieved apositive result on behalf of the Settlement Class Members.

Before initiating this litigation Plaintiff's Counsel agreed with the Named Plaintiff to request no more than one-third of any (at that time uncertain) future recovery. Thus, the Court knows what private plaintiffs "would have negotiated with their lawyers, had bargaining occurred at the outset of the case (that is, when the risk of loss still existed)." *In re Synthroid*, 264 F.3d at 718, 720. The Named Plaintiff contracted for Plaintiff's Counsel to be compensated with

8

an amount greater than what Plaintiff's Counsel now seek. *See In re Dairy Farmers of Am., Inc.*, 80 F. Supp. 3d 838, 844-45 (N.D. Ill. 2015) (stating "presumption of market-rate reasonableness" would have attached if parties had "established[ed] a fee structure at the outsetof [the] lawsuit").

It was reasonable for the Named Plaintiff to contract for one-third of the Gross Settlement Amount to be paid to Plaintiff's Counsel. In the Northern District of Illinois, class and collective action employment lawyers routinely contract to receive one-third of any potential settlement as compensation for taking on the risk of funding a potential multi-year litigation without any assurance of recovery. In addition, one-third is the standard contingent percentage that employment lawyers in the Northern District of Illinois charge individual clients. These multiple data points, confirming that plaintiffs routinely agree to a one-third contingency fee arrangement, reinforces that Plaintiff's Counsel, who are requesting less than one-third of the Gross Settlement Amount, are not requesting more than the proper market rate. *See In re Synthroid*, 325 F.3d at 976.

Courts routinely hold that one-third of a common fund is an appropriate attorneys' fees award in class action settlement, including wage and hour settlements. *See, e.g.*, *Briggs,* 2016 WL 7018566, at *3 (granting request for one-third of the settlement fund for attorneys' fees in FLSA collective action in the amount of $2,000,000 as attorneys' fees); *Castillo,* 2016 WL 7451626, at *4 (granting request for one-third of the settlement fund for attorneys' fees in FLSA collective action in the amount of $1,000,000 as attorneys' fees); *Koszyk*, 2016 WL 510916, at *3 (granting request for one-third of the settlement fund for attorneys' fees plus costs); *Watson,* No. 15 Civ. 11881 (N.D. Ill. July 11, 2016) (St. Eve, J.), ECF No. 34, 39 (same); *Taubenfeld*, 415 F.3d at 599-600 (noting class actions in the Northern District of Illinois have awarded fees of

9

30-39% of the settlement fund); *Gaskill v. Gordon*, 160 F.3d 361, 362-63 (7th Cir. 1998) (affirming award of 38% of fund); *In re Dairy Farmers of Am., Inc.*, 80 F. Supp. 3d at 842 (awarding fees on one-third common fund); *Goldsmith v. Tech. Solutions Co.*, No. 92 Civ. 4374, 1995 WL 17009594, at *7-8 (N.D. Ill. Oct. 10, 1995) (same and noting that "where the percentage method is utilized, courts in this District commonly award attorneys' fees equal to approximately one-third or more of the recovery"); Alba Conte *et al.*, *Newberg on Class Actions* § 14.6 (4th ed. 2002) ("[F]ee awards in class actions average around one-third of the recovery[.]").

Plaintiff's Counsel's decision to charge the market rate is also reasonable in light of the significant risks of nonpayment that Plaintiff's Counsel faced. At the outset of the litigation, Plaintiff's Counsel took "on a significant degree of risk of nonpayment" in agreeing to represent the Named Plaintiff. *Taubenfeld*, 415 F.3d at 600 (approving of district court's reliance on this factor in evaluating attorneys' fees). Plaintiff's Counsel took this case on a contingent basis, meaning that there was a strong risk that they would not be paid. *See Sutton*, 504 F.3d at 693-94 ("We recognized [in an earlier case] that there is generally some degree of risk that attorneys will receive no fee (or at least not the fee that reflects their efforts) when representing a class because their fee is linked to the success of the suit."). Plaintiff's Counsel also faced significant legal hurdles in establishing certification and proving liability. As the Seventh Circuit has noted, Plaintiff's Counsel "could have lost everything" they invested. *Matter of Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 570 (7th Cir. 1992) (Posner, J.).

  **B.**  **A $2,000 Incentive Award Is Reasonable.**

An incentive award $2,000 to Named Plaintiff Chrishona Hodges is reasonable. Plaintiffs in class and collective actions play a crucial role in bringing justice to those who would otherwise be hidden from judicial scrutiny. "Because a named plaintiff is an essential ingredient

10

of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit." *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998). This is especially true in employment litigation. Incentive awards are well suited in employment litigation because the plaintiffs assume the risk that future employers may look unfavorably upon them if they file suit against former employers. *Beesley v. Int'l Paper Co.*, No. 06 C 703, 2014 WL375432, at *4 (S.D. Ill. Jan. 31, 2014).

Incentive awards serve the important purpose of compensating plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiffs. *See, e.g.*, *Espenscheid*, 688 F.3d at 876-77 (Posner, J.); *Cook*, 142 F.3d at 1016; *Massiah v. MetroPlus Health Plan, Inc.*, No. 11 Civ. 5669, 2012 WL 5874655, at *8 (E.D.N.Y. Nov. 20, 2012); *cf. Follansbee v. Discover Fin. Servs., Inc.*, No. 99 Civ. 3827, 2000 WL 804690, at *7 (N.D. Ill. June 21, 2000) (recognizing the importance of incentive awards). Accordingly, incentive awards are commonly awarded to those who serve the interests of the class. *Massiah*, 2012 WL 5874655, at *8 (collecting cases); *accord Chesemore v. Alliance Holdings, Inc.*, No. 09 Civ. 413,2014 WL 4415919, at *4 (W.D. Wis. Sept. 5, 2014); *Hawkins v. Securitas Sec. Servs. USA, Inc.*, 280 F.R.D. 388, 395 (N.D. Ill. 2011).

In examining the reasonableness of a requested incentive award, courts consider: (1) the actions the plaintiff has taken to protect the interests of the class, (2) the degree to which the class has benefited from those actions, and (3) the amount of time and effort the plaintiff expended in pursuing the litigation. *Cook*, 142 F.3d at 1016; *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07 Civ. 2898, 2012 WL 651727, at *16 (N.D. Ill. Feb. 28, 2012). An examination of these factors warrants the approval of the requested incentive award.

First, Named Plaintiff Hodges took substantial actions to protect the interests of potential collective action members, and those actions resulted in a substantial benefit to approximately 50 Settlement Class Members, who will receive checks in amounts ranging from a minimum of $6.29 to a maximum of $8,394.56. Courts in this Circuit and others have approved larger incentive awards for similar activities. See *Briggs,* 2016 WL 7018566, at *3 (approving $12,500 incentive award to two plaintiffs in FLSA settlement for a total of $25,000 in incentive awards); *Castillo v. Noodles & Company,* No. 16-cv-03036, 2016 WL 7451623 (N.D. Ill. Dec. 23, 2016) (approving $10,000 incentive award to four plaintiffs in FLSA settlement for a total of $40,00 in incentive awards). Hodges' actions have resulted in a substantial benefit to the class.

Second, Hodges undertook substantial direct and indirect risk. In agreeing to file this class action suit in her name, Plaintiff Hodges undertook the significant risk that, "should the suit fail, [she could] find [herself] liable for the defendant's costs or even, if the suit [was] held to have been frivolous, for the defendant's attorneys' fees." *Espenscheid*, 688 F.3d at 876-77 (internal citations omitted). Although Plaintiff Hodges was no longer employed by Defendant when he filed the Complaint, she risked retaliation from future employers for the benefit of all Settlement Class Members. *See Beesley,* 2014 WL 375432, at *4 (recognizing thatsuits against former employers carry risks of professional and personal repercussions). "The incentive reward is designed to compensate [named plaintiffs] for bearing these risks." *Espenscheid,* 688 F.3d at 877; *accord Koszyk*, 2016 WL 5109196, at *3.

Third, Hodges spent time and effort pursuing this litigation on behalf of the Settlement Class Members. She provided factual information and otherwise assisted Plaintiff's Counsel with the prosecution of the litigation. *Briggs,* 2016 WL 7018566, at *3 (approving incentive award to named plaintiffs who expended time and effort providing pre- litigation assistance to plaintiff's

12

counsel, preparing and reviewing the complaint, providing a declaration, and helping prepare for mediation); *Castillo,* 2016 WL 7451626, at * 3 (approving incentive award to named plaintiffs who participated in an extensive pre-suit investigation, provided documents crucial to establishing the claims, and assisting plaintiffs' counsel in analyzing documents during the informal discovery process).

Accordingly, an incentive award of $2,000.00 to Named Plaintiff Chrishona Hodges for her service to the class members of this collective action is appropriate.

## CONCLUSION

Because the parties' Settlement Agreement is reasonable and fully comports with the requirements set out in 29 U.S.C. § 216, the Court should approve the Settlement Agreement and enter the proposed order attached hereto as Exhibit 3.

Respectfully submitted,

/s/Christopher J. Wilmes
One of the Attorneys for the Plaintiffs

Christopher J. Wilmes
Justin Tresnowski
Hughes Socol Piers Resnick & Dym
70 W. Madison St. Suite 4000
Chicago, IL 60602
(312) 580-0100