**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **CHRISHONA HODGES,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **CASE NO.  21-cv-3148** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **CASTLE CREDIT CO.** | ) | **Judge Robert W. Gettleman** |
| **HOLDINGS, LLC** | ) | |
| | ) | **Magistrate Judge Sunil Harjani** |
| **Defendant.** | ) | |

**ORDER APPROVING SETTLEMENT, INCENTIVE AWARD,
AND ATTORNEYS' FEES AND COSTS**

The above-entitled matter came before the Court on Plaintiff's Unopposed Motion to

Certify a Collective Action Under Section 216(b) of the FLSA Solely for Settlement Purposes,

for Approval of An Opt-In Settlement, and For Approval of Awards of Attorneys' Fees and

Costs and Incentive Award ("Motion for Settlement Approval"). After reviewing the Motion for

Settlement Approval, the supporting Memorandum of Law in Support of the Motion for

Settlement Approval (the "Memorandum"), the Declaration of Christopher J. Wilmes ("Wilmes

Decl.") and the supporting exhibits, the Court hereby finds as follows:

**The Settlement Is Approved.**

1.      The Joint Stipulation of Settlement ("Settlement Agreement") submitted by the

parties is approved.

2.      The Court approves and incorporates by reference all of the definitions contained

in the Settlement Agreement.

3.      The Court certifies, for purposes of the parties' settlement of this case and the

Settlement Agreement, the following Settlement Class for collective treatment pursuant to 29

U.S.C. §216(b): individuals who worked for Defendant as hourly employees in Illinois between

June 11, 2018 and June 11, 2021, who worked a total of more than forty hours in a workweek, and who received commissions during at least one workweek in which the individual worked over forty hours.

4.    The Court hereby approves the Eighty-Five Thousand Dollar ($85,000.00) gross settlement amount. Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes. *See, e.g.*, *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982); *Murphy v. Diversified Restaurant Holdings, Inc.*, No. 14-cv-3653, ECF No. 124, Order Approving Settlement and Dismissing Action, ¶ 1 (N.D. Ill. Oct. 1, 2015); *see also Butler v. Am. Cable & Telephone, LLC*, No. 09 Civ. 5336, 2011 WL 4729789, at *8-9 (N.D. Ill. Oct. 6, 2011). If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement. *Lynn's Food Stores*, 679 F.2d at 1354; *Roberts v. Apple Sauce, Inc.*, No. 12 Civ. 830, 2014 WL 4804252, at *2 (N.D. Ind. Sept. 25, 2014). "It is a well settled principle that the law generally encourages settlements." *Dawson v. Pastrick*, 600 F.2d 70, 75 (7th Cir. 1979).

5.    Here, the settlement meets the standard for approval. The settlement was the result of contested litigation. Defendant denied that it violated the FLSA and Illinois Minimum Wage Law ("IMWL") by not including commission payments when calculating workers' regular rates of pay. Recognizing the uncertain legal and factual issues involved, the parties reached their settlement after Defendant produced and the Parties' reviewed three-years' worth of payroll data for employees working in a similar role as the Named Plaintiff. At all times during the settlement negotiation process, negotiations were conducted at arm's length.

**The Settlement Procedure Is Approved**

6.    A one-step settlement approval process is appropriate. *See, e.g.*, *Briggs v. PNC Financial Services Group, Inc.*, No. 15-cv-10447, 2016 WL 7018566, at *1 (N.D. Ill. Nov. 29,

2016) citing *Koszyk v. Country Fin. a/k/a CC Servs., Inc.*, No. 16 Civ. 3571, 2016 WL 5109196, at \*1 (N.D. Ill. Sept. 16, 2016) ("'A one-step settlement approval process is appropriate[]'" in FLSA settlements.); *Castillo v. Noodles & Co.,* No. 16-cv-030306, 2016 WL 7451626, at \*1 (N.D. Ill. Dec. 23, 2016) (granting request for one-step approval process); *Prena v. BMO Fin. Corp.*, No. 15 Civ. 9175, 2015 WL 2344949, at \*1 (N.D. Ill. May 15, 2015) (same). Collective actions under 29 U.S.C. § 216(b) require workers to affirmatively opt-in to the litigation, unlike in a Federal Rule of Civil Procedure 23 class action. *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 772 (7th Cir. 2013); *see also Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1529 (2013) ("Rule 23 actions are fundamentally different from collective actions under the FLSA."). Because the failure to opt in to an FLSA lawsuit does not prevent potential members of the collective from bringing their own suits in the future, FLSA collective actions do not implicate the same due process concerns as do Rule 23 actions. *Woods v. N.Y. Life Ins. Co.*, 686 F.2d 578, 579-80 (7th Cir. 1982) (discussing due process concerns present in Rule 23 class action that are not present in FLSA collective actions).

7.      The Settlement Notice attached to the Settlement Agreement as Exhibit B is approved. Plaintiff's Counsel shall make any necessary corrections to the dates in the Settlement Notice. The direct issuance of settlement checks informs Settlement Class Members of the specific amounts of their individual Settlement Payments. The Settlement Notice sufficiently informs Settlement Class Members of the other key terms of the settlement, including how Class Members may participate (or not participate), how the Gross Settlement Amount is being allocated, what the Settlement Payment represents, the scope of the release, and the request for attorneys' fees and costs. *See Koszyk*, 2016 WL 5109196, at \*2 (N.D. Ill. Sept. 16, 2016) (approving class notice that, *inter alia*, described settlement terms and fee allocation); *Zolkos v.*

*Scriptfleet, Inc.*, No. 12 Civ. 8230, 2014 WL 7011819, at *6 (N.D. Ill. Dec. 12, 2014) (same);

*Tobin v. Beer Capitol Distributing Inc.*, No. 12 Civ. 274, 2012 WL 5197976, at *3 (E.D. Wis.

Oct. 19, 2012) (same).

8.      The plan for sending the Settlement Payments as described in the Settlement

Agreement is approved.

**The Incentive Award Is Approved.**

9.      An incentive award of Two Thousand and No/100ths Dollars ($2,000.00) to

Named Plaintiff Chrishona Hodges is approved. The amount shall be paid from the Gross

Settlement Amount. Plaintiffs in class and collective actions play a crucial role in bringing

justice to those who would otherwise be hidden from judicial scrutiny. "Because a named

plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is

necessary to induce an individual to participate in the suit." *Cook v. Niedert*, 142 F.3d 1004,

1016 (7th Cir. 1998). This is especially true in employment litigation. Incentive awards are well

suited in employment litigation because the plaintiffs assume the risk that future employers may

look unfavorably upon them if they file suit against former employers. *Beesley v. Int'l Paper Co.*,

No. 06 C 703, 2014 WL375432, at *4 (S.D. Ill. Jan. 31, 2014).

10.      Incentive awards serve the important purpose of compensating plaintiffs for the

time and effort expended in assisting the prosecution of the litigation, the risks incurred by

becoming and continuing as a litigant, and any other burdens sustained by the plaintiffs. *See,

e.g.*, *Espenscheid*, 688 F.3d at 876-77 (Posner, J.); *Cook*, 142 F.3d at 1016; *Massiah v.

MetroPlus Health Plan, Inc.*, No. 11 Civ. 5669, 2012 WL 5874655, at *8 (E.D.N.Y. Nov. 20,

2012); *cf. Follansbee v. Discover Fin. Servs., Inc.*, No. 99 Civ. 3827, 2000 WL 804690, at *7

(N.D. Ill. June 21, 2000) (recognizing the importance of incentive awards). Accordingly,

incentive awards are commonly awarded to those who serve the interests of the class. *Massiah*,

2012 WL 5874655, at *8 (collecting cases); *accord Chesemore v. Alliance Holdings, Inc.*, No. 09

Civ. 413,2014 WL 4415919, at *4 (W.D. Wis. Sept. 5, 2014); *Hawkins v. Securitas Sec. Servs.*

*USA, Inc.*, 280 F.R.D. 388, 395 (N.D. Ill. 2011).

11.      In examining the reasonableness of a requested incentive award, courts consider:

(1) the actions the plaintiff has taken to protect the interests of the class, (2) the degree to which

the class has benefited from those actions, and (3) the amount of time and effort the plaintiff

expended in pursuing the litigation. *Cook*, 142 F.3d at 1016; *Am. Int'l Grp., Inc. v. ACE INA*

*Holdings, Inc.*, No. 07 Civ. 2898, 2012 WL 651727, at *16 (N.D. Ill. Feb. 28, 2012). An

examination of these factors warrants the approval of the requested incentive award.

12.      First, the Named Plaintiff Hodges took substantial actions to protect the interests

of potential collective action members, and those actions resulted in a substantial benefit to

approximately 50 Settlement Class Members, who will receive checks in amounts ranging from a

minimum of a minimum of $6.29 to a maximum of $8,394.56. Courts in this Circuit and others

have approved larger incentive awards for similar activities. See *Briggs,* 2016 WL 7018566, at

*3 (approving $12,500 incentive award to two plaintiffs in FLSA settlement for a total of

$25,000 in incentive awards); *Castillo v. Noodles & Company,* No. 16-cv-03036*,* 2016 WL

7451623 (N.D. Ill. Dec. 23, 2016) (approving $10,000 incentive award to four plaintiffs in FLSA

settlement for a total of $40,00 in service awards). Hodges's actions have resulted in substantial

benefit to the class.

13.      Second, Hodges undertook substantial direct and indirect risk. In agreeing to file

this class action suit in his name, Plaintiff Hodges undertook the significant risk that, "should the

suit fail, [she could] find [herself] liable for the defendant's costs or even, if the suit [was] held to

have been frivolous, for the defendant's attorneys' fees." *Espenscheid*, 688 F.3d at 876-77

(internal citations omitted). Although Plaintiff Hodges was no longer employed by Defendant when she filed the Complaint, she risked retaliation from future employers for the benefit of all Settlement Class Members. *See Beesley,* 2014 WL 375432, at \*4 (recognizing that suits against former employers carry risks of professional and personal repercussions). "The incentive reward is designed to compensate [named plaintiffs] for bearing these risks." *Espenscheid,* 688 F.3d at 877; *accord Koszyk*, 2016 WL 5109196, at \*3.

14.     Third, Hodges spent time and effort pursuing this litigation on behalf of the Settlement Class Members. Hodges provided factual information and otherwise assisted Plaintiff's Counsel with the prosecution of the litigation. *Briggs,* 2016 WL 7018566, at \*3 (approving incentive award to named plaintiffs who expended time and effort providing pre-litigation assistance to plaintiff's counsel, preparing and reviewing the complaint, providing a declaration, and helping prepare for mediation); *Castillo,* 2016 WL 7451626, at \*3 (approving incentive award to named plaintiffs who participated in an extensive pre-suit investigation, provided documents crucial to establishing the claims, and assisting plaintiffs' counsel in analyzing documents during the informal discovery process).

15.     Accordingly, an incentive award of $2,000.00 to Named Plaintiff Chrishona Hodges for her service to the class members of this collective action is approved.

**Fees and Costs Plaintiff's Attorneys Are Approved**

16.     The Court grants Plaintiff's Counsel's request for Twenty Thousand and No/100ths Dollars ($20,000.00), less than one third of the Gross Settlement Amount, as attorneys' fees and litigation expenses.

17.     In awarding attorneys' fees, courts ultimately "must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *In re Synthroid*, 264 F.3d at 718. District courts must

"undertake an analysis of the terms to which the private plaintiffs and their attorneys would have contracted at the outset of the litigation when the risk of loss still existed." *Sutton*, 504 F.3d at 692. They must "do their best to recreate the market by considering factors such as actual fee contracts that were privately negotiated for similar litigation, [and] information from other cases . . . ." *Taubenfeld v. AON Corp.*, 415 F.3d 597, 599 (7th Cir. 2005).

18.     Plaintiff's request for less than one-third of the settlement in attorneys' fees is consistent with, and even below, the market in the Northern District of Illinois. *Taubenfeld,* 415 F.3d at 600 (approving award of 30% of settlement fund plus expenses based in part on analysis of similar cases in the Northern District of Illinois). Plaintiff's Counsel are experienced wage and hour class and collective action litigators and have achieved a positive result on behalf of the Settlement Class Members.

19.     Before initiating this litigation Plaintiff's Counsel agreed with the Named Plaintiff to request no more than one-third of any (at that time uncertain) future recovery. Thus, the Court knows what private plaintiffs "would have negotiated with their lawyers, had bargaining occurred at the outset of the case (that is, when the risk of loss still existed)." *In re Synthroid*, 264 F.3d at 718, 720. The Named Plaintiff contracted for Plaintiff's Counsel to be compensated with an amount greater than the amount Plaintiff's Counsel now seek. *See In re Dairy Farmers of Am., Inc.*, 80 F. Supp. 3d 838, 844-45 (N.D. Ill. 2015) (stating "presumption of market-rate reasonableness" would have attached if parties had "established[ed] a fee structure at the outsetof [the] lawsuit").

20.     It was reasonable for the Named Plaintiff to contract for one-third of the Gross Settlement Amount to be paid to Plaintiff's Counsel. In the Northern District of Illinois, class and collective action employment lawyers routinely contract to receive one-third of any potential

settlement as compensation for taking on the risk of funding a potential multi-year litigation without any assurance of recovery. In addition, one-third is the standard contingent percentage that employment lawyers in the Northern District of Illinois charge individual clients. These multiple data points, confirming that plaintiffs routinely agree to a one-third contingency fee arrangement, reinforces that Plaintiff's Counsel, who are requesting less than one-third of Gross Settlement Amount, are not requesting more than the proper market rate. *See In re Synthroid*, 325F.3d at 976.

21.     Courts routinely hold that one-third of a common fund is an appropriate attorneys' fees award in class action settlement, including wage and hour settlements. *See, e.g.*, *Briggs*, 2016 WL 7018566, at *3 (granting request for one-third of the settlement fund for attorneys' fees in FLSA collective action in the amount of $2,000,000 as attorneys' fees); *Castillo,* 2016 WL 7451626, at *4 (granting request for one-third of the settlement fund for attorneys' fees in FLSA collective action in the amount of $1,000,000 as attorneys' fees); *Koszyk*, 2016 WL 510916, at *3 (granting request for one-third of the settlement fund for attorneys' fees plus costs); *Watson,* No. 15 Civ. 11881 (N.D. Ill. July 11, 2016) (St. Eve, J.), ECF No. 34, 39 (same); *Taubenfeld*, 415 F.3d at 599-600 (noting class actions in the Northern District of Illinois have awarded fees of 30-39% of the settlement fund); *Gaskill v. Gordon*, 160 F.3d 361, 362-63 (7th Cir. 1998) (affirming award of 38% of fund); *In re Dairy Farmers of Am., Inc.*, 80 F. Supp. 3d at 842 (awarding fees on one-third common fund); *Goldsmith v. Tech. Solutions Co.*, No. 92 Civ. 4374, 1995 WL 17009594, at *7-8 (N.D. Ill. Oct. 10, 1995) (same and noting that "where the percentage method is utilized, courts in this District commonly award attorneys' fees equal to approximately one-third or more of the recovery"); Alba Conte *et al.*, *Newberg on Class Actions*

§ 14.6 (4th ed. 2002) ("[F]ee awards in class actions average around one-third of the recovery[.]").

22.    Plaintiff's Counsel's decision to charge the market rate is also reasonable in light of the significant risks of nonpayment that Plaintiff's Counsel faced. At the outset of the litigation, Plaintiff's Counsel took "on a significant degree of risk of nonpayment" in agreeing to represent the Named Plaintiff. *Taubenfeld*, 415 F.3d at 600 (approving of district court's reliance on this factor in evaluating attorneys' fees). Plaintiff's Counsel took this case on a contingent basis, meaning that there was a strong risk that they would not be paid. *See Sutton*, 504 F.3d at 693-94 ("We recognized [in an earlier case] that there is generally some degree of risk that attorneys willreceive no fee (or at least not the fee that reflects their efforts) when representing a class becausetheir fee is linked to the success of the suit."). Plaintiff's Counsel also faced significant legal hurdles in establishing certification and proving liability. As the Seventh Circuit has noted, Plaintiff's Counsel "could have lost everything" they invested. *Matter of Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 570 (7th Cir. 1992) (Posner, J.).

23.

**Dismissal and Post-Judgment Procedure**

24.    This case is dismissed without prejudice, with leave to reinstate within 30 days after the Check Cashing Deadline. In the event a motion to reinstate is not filed within 30 days after the Check Cashing Deadline, the case shall be deemed, without further order of the Court, to be dismissed with prejudice.

25.    The Court will retain jurisdiction over this action for the purposes of supervising the implementation, enforcement, construction, administration, and interpretation of the Settlement Agreement, including for overseeing the distribution of settlement funds.

26.     The parties shall abide by all terms of the Settlement Agreement, which are
incorporated herein, and this Order.

It is so ORDERED this 21st day of October, 2021

Hon. Robert W. Gettleman
United States District Judge

10